UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **BLANCA REYES** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| v. | § | |
| | § | |
| **MICHAEL J. ASTRUE,** | § | **Civil No. SA-07-CA-0389-XR** |
| **Commissioner of the Social Security** | § | |
| **Administration** | § | |
| | § | |
| **Defendant** | § | |
| | § | |
| | § | |

**ORDER**

    This case has a rather unusual procedural history. Plaintiff requested a hearing to challenge the termination of her benefits in 1998; this request was dismissed on September 18, 2000, because of her failure to appear. Plaintiff now alleges that there is no record of this dismissal and that she received no notice regarding it. However, as there is no record that plaintiff appealed the dismissal of this appeal of the termination of benefits in 2000, this issue is not properly before this Court.

    Plaintiff filed her second application for Supplemental Security Income (SSI) benefits on October 31, 2002, alleging disability beginning in 1983. The Social Security Administration (SSA) denied the application initially and upon reconsideration. On April 5, 2005, an administrative law judge (ALJ) determined that Plaintiff is not disabled. On September 9, 2005, the Appeals Council denied plaintiff's request for review of the ALJ's decision dated "September 18, 2000" (Tr. 5-12). Plaintiff appealed. She subsequently appealed to this Court. In October 2006, this Court issued a

ruling stating that it lacked jurisdiction over this appeal because the Appeals Council failed to deny review of the ALJ decision dated April 5, 2005, and, therefore, there was no final Order of the Commissioner which could be appealed to this Court under 42 U.S.C. §405(g). As a result, this case was remanded to the Appeals Council. The Appeals Council admitted additional evidence into the record in March 2007 and subsequently denied plaintiff's request for review of the April 5, 2005, decision. Plaintiff again appeals to this Court.

## I.  FACTUAL BACKGROUND

Plaintiff's right arm was severed by a potato picking machine while she was employed as a migrant farm worker in 1983. She initially applied for and was granted SSI benefits in 1989. She received these benefits until 1998, when a Continuing Disability Review (CDR) was conducted by the SSA. While this termination is not the subject of this appeal, much of the medical evidence was reintroduced as a part of Plaintiff's second application. As part of this CDR, the SSA sent Plaintiff to physical examinations by Drs. Ross and Guajardo. The examination by Dr. Ross found good restoration of function in Plaintiff's right arm and led the SSA to conclude that Plaintiff had ceased to be disabled due to medical improvement. Dr. Guajardo, however, found that Plaintiff had deformities of the right forearm and a weak right hand as a result of the injury and the surgeries that followed. The SSA also had Plaintiff examined by Drs. Aguado and Samaraunga, whose reports were consistent with and expanded upon Dr. Guajardo's report. They found that Plaintiff has significant difficulty using her right arm, is unable to push or pull more than five pounds, and continues to experience significant atrophy and deformity of her arm.

Plaintiff was also sent for a psychological examination by Dr. Croft. Dr. Croft did not conduct an IQ test but found that Plaintiff suffered from depression, was functionally illiterate, and had a Global Assessment of Functioning (GAF) score of 50, which indicates a serious impairment

in social, occupational, or school functioning.

Plaintiff requested assistance from the Texas Rehabilitation Commission to find employment and was consequently examined by Dr. Henke. Dr. Henke administered a Weschler Adult Intelligence Test (WAIS III) to measure Plaintiff's IQ. Plaintiff scored 61 on the full portion of the test, 61 on the verbal test, and 69 on the performance test. Dr. Henke described Plaintiff's reading and comprehension levels as placing her in the "moderate to mild retardation range."[1] Henke also administered the Raven Coloured Progressive Matrices, on which Plaintiff obtained a score of 70. This score is within the "boderline range" and Henke believes that "this is a more accurate reflection of [Plaintiff's] ability."[2]

Plaintiff had an additional psychological evaluation conducted by Dr. Flores and Ms. Stultz in November 2006. This evaluation was conducted after the April 5, 2005, ALJ proceeding that is the basis for this appeal; however, on November 7, 2006, the Appeals Council solicited additional evidence that was "new *and* material to the issues considered in the hearing decision dated April 5, 2005."[3] This evaluation placed Plaintiff in a deficient range of intellectual function and stated that she demonstrates a significant cognitive impairment. Dr. Flores and Ms. Stultz note that "[Plaintiff] meets the diagnostic criteria of an individual with mental retardation."[4]

---

[1] Tr. 218.

[2] Tr. 217.

[3] Tr. 299.

[4] Tr. 326.

### III.  STANDARD OF REVIEW

The Court's review of the Commissioner's decision to deny disability benefits is limited to a determination of whether (1) the decision is supported by the evidence, and (2) the Commissioner applied the proper legal standards in evaluating the evidence.[5]  If the Commissioner's findings are supported by substantial evidence, the determination must be affirmed.[6]  Evidence is considered substantial if it is more than a scintilla, less than a preponderance, and if a reasonable mind might accept it as adequate to support a conclusion.[7]  A rejection of the Commissioner's finding is appropriate only if no credible choices or contrary medical evidence exists.[8]

The Court does not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's.[9]  Any conflict in the evidence is for the Commissioner to resolve.[10]  In determining whether substantial evidence supports the Commissioner's determination, the following four elements of proof are weighed: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education, and work experience.[11]

---

[5] *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001).

[6] *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988).

[7] *Boyd supra* note 4, *quoting Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (*quoting Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) *and citing Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988)).

[8] *Abshire*, 848 F.2d at 640.

[9] *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[10] *Id*.

[11] *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).

### III.  LEGAL FRAMEWORK OF THE SOCIAL SECURITY ACT

The term "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[12]  A person shall be determined to be disabled:

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.[13]

To determine if a claimant qualifies as disabled under the Social Security Act, the Commissioner makes the following sequential inquiry: (1) is the claimant engaged in substantial gainful activity; (2) does the claimant have a severe impairment; (3) does the impairment meet or equal an impairment listed in 20 C.F.R. § 404, Subpt. P, App. 1; (4) does the impairment prevent the claimant from doing past relevant work; and (5) does the impairment prevent the claimant from doing any other work.[14]  The claimant bears the burden of proving the first four requirements.  If the claimant establishes these elements, the burden then shifts to the Commissioner to prove that the impairment does not prevent the claimant from performing other jobs.[15]  If the Commissioner adequately points to potential alternative employment, the burden then shifts back to the claimant

---

[12] 42 U.S.C. § 423 (d)(1)(A).

[13] 42 U.S.C. § 423 (d)(2)(A).

[14] 20 C.F.R. §§ 404.1520, 416.920.

[15] *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999).

to prove that he is unable to perform the alternative work.[16]

## IV.  PLAINTIFF'S OBJECTIONS

**A. Plaintiff's prior receipt of disability placed the burden on the SSA to show improvement in her condition**

Plaintiff received SSI benefits from 1989 to 1998, at which point they were discontinued as the result of a CDR. Plaintiff had the opportunity to appeal this decision and, indeed, attempted to do so, but her request for a hearing was dismissed on September 18, 2000, for her failure to appear. The Magistrate Judge correctly notes that plaintiff has submitted no evidence in the present appeal suggesting that she attempted to appeal the dismissal of her request for a hearing. "The matter of plaintiff's medical improvement *vel non* has never been considered by an ALJ or the Appeals Council and cannot be considered here."[17] The termination of plaintiff's benefits is not properly before this Court. This appeal deals solely with the rejection of her second application for benefits in 2002.  Because this is a new application, there is no reason to believe that the burden should be shifted to the SSA.

**B. The ALJ committed legal error by ignoring the evidence describing Blanca as mildly retarded and failing to classify Plaintiff as disabled under listing 12.05C (a listing of mild to moderate mental retardation). The ALJ does not have the discretion to ignore IQ evidence from a medical source without some contravening medical evidence.**

An ALJ is able to make factual determinations on the validity of IQ tests,[18] but the ALJ's

---

[16] *Id*.

[17] Docket # 26, p. 9.

[18] *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991).

discretion in rejecting medical evidence has been limited in more recent cases. The ALJ "'must always give good reasons . . . for the weight [it affords an opinion]' and must show good cause when giving that opinion little or no weight."[19]  While the Sixth Circuit has held that "the SSA requires ALJs to give reasons for only *treating* sources,"[20] the Fifth Circuit has not yet made this determination. The Fifth Circuit, rather, has set out rules that "effectively reach the same result"[21] as the Third Circuit's requirement that an ALJ mention all evidence in support of and contrary to her decision.[22] The Fifth Circuit's approach more closely resembles the Seventh Circuit's approach, which requires a "minimal level of articulation" of the ALJ's weighing method if considerable evidence contradicts her decision.[23] This case presents a unique situation to the Court. While there is no definitive case law governing the ALJ's responsibilities in weighing examining sources, it is the Court's belief that the absence of an opinion controverting Plaintiff as mildly retarded merits additional explanation from the ALJ. Specifically, the Court notes that there is no discussion by the ALJ regarding the weighing method used in rejecting the opinions of examining physicians such as Drs. Guajardo and Samaraunga.  The Court also believes that considerable evidence contradicted the

---

[19]*Beasley v. Barnhart*, 191 Fed. Appx. 331, 334 (Unpublished) (5th Cir. 2006).

[20] *Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir. 2007).

[21] *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). *See also Hernandez v. Astrue*, 2008 U.S. App. LEXIS 10391, 16 (Unpublished) (5th Cir. 2008) ("although an ALJ 'is bound . . . to explain his reasons for rejecting a claimant's complaints of pain,' he is not required to 'follow formalistic rules in his application'").

[22] *James J. Flanagan Stevedores, Inc. v. Gallagher*, 219 F.3d 426, 430 (5th Cir. 2000) (noting that the 5th Circuit has expressly rejected the 3rd Circuit's requirement of strict disclosure of evidence used to make certain Social Security benefits decisions).

[23]*See Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984) ("a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position"). This stance is also found in the Ninth Circuit. *See Vincent on behalf of Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).

ALJ's decision regarding Plaintiff's retardation and that the ALJ's finding that Plaintiff is not mentally retarded also requires additional explanation.

For a qualified disability, listing 12.05C requires "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." While 12.05C also requires that "evidence demonstrates or supports onset of the impairment before age 22", the Court notes that a presumption that adult tested IQ levels have remained constant from childhood is present in many appellate courts.[24]

Plaintiff's IQ scores on the tests administered by Dr. Henke were in the range provided by 12.05C. While Dr. Henke notes that Plaintiff's score of 70 places her "in the borderline range" and that this "is a more accurate reflection of [Plaintiff's] ability,"[25] Plaintiff's scores are still within the statutory range. The Court remands to the ALJ to consider Dr. Henke's comments in light of all of the evidence, including the opinions of the new doctors that find mental retardation. The ALJ might find it helpful to order a new IQ test performed. Finally, in the event that Plaintiff is found to still meet the 60 to 70 requirement, the ALJ will need to consider the second part of 12.05C (regarding an additional physical or mental limitation). This Court believes it would be helpful for the ALJ to

---

[24] See Hodges v. Barnhart, 276 F.3d 1265, 1266 (11th Cir. 2001) ("We agree with other circuits in concluding that there is a presumption that mental retardation is a condition that remains constant throughout life . . . a claimant need not present evidence that she manifested deficits in adaptive functioning prior to the age twenty-two, when she presented evidence of low IQ test results after the age of twenty-two."). See also Branham v. Heckler, 775 F.2d 1271, 1274 (4th Cir. 1985) ("The fact that [an IQ test] was not earlier taken does not preclude a finding of earlier retardation. We must and do assume, therefore, that in the absence of any evidence of a change in plaintiff's intellectual functioning from the time of his back injury to the time of his IQ test, that he had the same or approximately the same IQ [at the time of the injury as the time of the test].").

[25] Tr. 217.

more thoroughly discuss this clause and consider the opinions of Drs. Guajardo and Samaraunga, as well as the new evidence submitted at the request of the Appeals Council, in making its determination.

**C. The ALJ did not properly reject Plaintiff's claims under the "meets or equals a listing" qualification.**

The ALJ conducts a five part analysis to determine if a claimant is disabled.[26] At each step, the ALJ "is required to discuss the evidence and explain the basis for his findings" if such findings are unfavorable.[27] In this case, the ALJ simply found that "the claimant does not have an impairment or combination of impairments that is severe enough to meet or medically equal, either singly or in combination, on of the impairments listed in Appendix 1, Subpart P, Regulations No. 4."[28] The Court finds a more thorough explanation of the basis for this finding is necessary and remands for further examination and explanation, consistent with this Order.

**D. The testimony of the vocational expert is inconsistent with the evidence.**

It is the responsibility of the ALJ to weigh evidence in the presence of inconsistency, decide if it is possible to reach a conclusion about disability, and make that conclusion if possible.[29] The vocational expert's testimony may be inconsistent with Plaintiff's ability to only read or spell one-syllable words.[30] However, it is not clear that the ALJ erred in using the testimony of the vocational

---

[26] 20 C.F.R. §§ 404.1520, 416.920.

[27] *Rushing v. Astrue*, 2008 U.S. Dist. LEXIS 12253, 7 (Memorandum) (WD LA 2008), *Griffin v. Astrue*, 2008 U.S. Dist. LEXIS 12041, 8 (Memorandum) (WD LA 2008).

[28] Tr. 19.

[29] 20 C.F.R. §404.1527(c)(2).

[30] Tr. 218.

expert. The ALJ considered the testimony in light of the medical evidence and Plaintiff's ability to perform light work.[31] Plaintiff was able to and did cross-examine the vocational expert at trial with regard to Plaintiff's difficulty with reading and writing.[32] Plaintiff does not argue that the vocational expert was not qualified to testify.[33] With these factors in mind, an examination of the vocational expert's testimony is outside of this Court's scope of review.

**E.  Conclusion**

This Court believes that the ALJ should consider the evidence from Drs. Guajardo and Samaraunga along with the new testimony. The ALJ should also give a fuller explanation of whether or not Plaintiff's impairments meet or equal a listing in 20 C.F.R. § 404, Subpt. P, App. 1.  It would be helpful for the ALJ to consider the second part of Listing 12.05C, regarding a physical or other mental limitation. Finally, the ALJ may wish to order another IQ test for Plaintiff to determine if she is again within the 60 through 70 range.

Accordingly, this case is **REMANDED** to the ALJ**.**

It is so ORDERED.

SIGNED this 28th day of May, 2008.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[31] Tr. 22.

[32] Tr. 281.

[33] Tr. 278.